

1   WARREN H. NELSON, JR. #104744
    A PROFESSIONAL CORPORATION
2   6161 El Cajon Boulevard, # 273
    San Diego, CA 92115
3   Telephone:  (619) 269 4212
    Facsimile:  (619) 501 7948
4
    Attorney for Defendant
5   STANDARD INSURANCE COMPANY

6

7

8                   UNITED STATES DISTRICT COURT

9               SOUTHERN DISTRICT OF CALIFORNIA

10

11  LAURIE ORANGE                    )  Case No.:  '08 CV 686    BTM CAB
                                     )
12          vs.                      )  DEFENDANT STANDARD
                                     )  INSURANCE COMPANY'S NOTICE
13                                   )  OF REMOVAL
                                     )
14  STANDARD INSURANCE               )
15  COMPANY, a corporation; and DOES )
    1 through 10, inclusive,         )
16                                   )
                                     )
17          Defendants.              )
                                     )
18                                   )
                                     )
19

20

21      PLEASE TAKE NOTICE that defendant Standard Insurance Company

22  ("Standard") hereby removes to this court the following action on file in the

23  California Superior Court:

24      1.    On March 25, 2008, the action, <u>Laurie Orange v. Standard Insurance</u>

25  <u>Company, a corporation; and DOES 1 through 10, inclusive, Defendants</u>, was filed

26  in the Superior Court of California, County of San Diego, and assigned case No.

27  37-2008-00080596-CU-IC-CTL.  A true and correct copy of the Complaint in that

28  action, including Exhibit A to the Complaint, is attached hereto as Exhibit 1.

2.    Standard first received a copy of the Summons, Complaint and associated documents less than 30 days ago on March 27, 2008.  A true and correct copy of the Summons and all other documents served therewith, other than the Complaint, are collectively attached hereto as Exhibit 2.

3.    The Court has original jurisdiction over this matter pursuant to 28 U.S.C. section 1332, which is removable pursuant to 28 U.S.C. section 1441(b) based upon the complete diversity of citizenship of the parties to this action and that the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4.    Defendant Standard is an Oregon corporation with its principal place of business in Multnomah County, Portland, Oregon.  See Declaration of Rebecca J. Jeffrey in Support of Defendant Standard Insurance Company's Notice of Removal, filed herewith. Standard has not been notified that any DOE defendant has been served and on that basis alleges that no DOE defendant has been served in this matter.

5.    As per Exhibit 1 p.1 (Complaint for: 1.  Breach of Good Faith and Fair Dealing 2. Breach of Contract ("Compl") ¶ 1), Plaintiff alleges and admits that she is a resident of the State of California, County of San Diego.

6.    Standard alleges that the amount in controversy in this action, pleaded as an insurance contract ***and*** "bad faith" action, on a theory of anticipatory breach of a disability insurance benefits contract, is in excess of $75,000.00, exclusive of interest and costs.  Plaintiff was allegedly an attorney employed by the County of San Diego, a governmental employer.  Plaintiff alleges that Standard has, upon application of a policy limitation, "anticipatorily breached the disability benefits contract," i.e., the group long-term disability insurance policy Standard issued to the County of San Diego, and, further, wrongfully refused to process her claim for a "disability waiver of premium" on a life insurance policy.  Ex 1 pp 6, 9 (Compl ¶¶ 12, 20-21).  Additionally, plaintiff claims that Standard has presently breached the implied covenant of good faith and fair dealing, so that her claims sound in tort

as well as contract. Ex 1 pp 6-8 (Compl ¶¶ 13-19).   She thereby also claims

current damages and several types of injury arising from this allegedly wrongful

conduct.  Ex 1 p 8 (Compl ¶¶ 16).   For example, plaintiff claims that

- she "has suffered and will continue to suffer, anxiety, worry, mental and emotional distress." Ex 1 p 8 (Compl ¶ 17).
- she has currently suffered "other incidental damages and out of pocket expenses." Ex 1 p 8 (Compl ¶ 17).
- she "was compelled to retain legal counsel to obtain the benefits an coverage due under the Policy" and is thereby entitled to an award of so-called "Brandt damages." Ex 1 p 8 (Compl ¶ 18); and,
- she is entitled to punitive damages. Ex 1 p 8 (Compl ¶ 19).

Plaintiff has already admitted that she seeks an otherwise unspecified amount in

excess of $25,000.00 in her state court filings. Exhibit 2 p 35 (State Court Civil

Case Cover Sheet).  Standard therefore alleges that it is plain from the face and

allegations of the Complaint that plaintiff seeks more than $75,000.00 for these

claimed items of *tort* damages alone, i.e., exclusive even of any amounts she seeks

on her breach of contract claim.  Standard's undersigned counsel has also written a

letter to plaintiff's counsel with regard to the amount in controversy issue, a true

and correct copy of which is attached hereto as Exhibit 3 pp 40-41, and requesting

that plaintiff stipulate that she is not seeking in excess of $75,000.00, exclusive of

interest and costs.  Plaintiff's counsel have responded by voice mail stating that,

". . . of course, we could not stipulate that we are not seeking damages in excess of

the jurisdictional limit, so I did want to respond to you and then say we're

seeking—that, of course, we are [i.e., seeking damages in excess of the

jurisdictional limit]."

    7.    Standard files herewith as Exhibit 4 a true and correct copy of its

general denial and affirmative defenses that was served by mail on plaintiff and

filed in the Superior Court of California, County of San Diego, prior to removal of this action to this Court.

Dated: April 15, 2008

WARREN H. NELSON, JR.
A PROFESSIONAL CORPORATION
6161 El Cajon Boulevard, # 273
San Diego, CA 92115

Attorney for Defendant
STANDARD INSURANCE COMPANY

**TABLE OF CONTENTS**

**EXHBITS TO NOTICE OF REMOVAL**

<u>LAURIE ORANGE v. STANDARD INSURANCE COMPANY, ET AL.</u>, U.S.D.C., Southern District of California, Case No. not yet assigned, originally filed under same name as action No. 37-2008-00080596-CU-IC-CTL, Superior Court of California, County of San Diego.

| <u>EXHIBIT</u> | <u>PAGE (S)</u> |
|---|---|
| 1 | 1 – 33 |
| 2 | 34 - 39 |
| 3 | 40 - 41 |
| 4 | 42 - 45 |

1   Robert K. Scott, Esq., #67466
    D. Scott Mohney, Esq., #124426
2   LAW OFFICES OF ROBERT K. SCOTT
    7700 Irvine Center Drive, Suite 605
3   Irvine, CA 92618
    Telephone: (949) 753-4950
4   Facsimile: (949) 753-4949

5   Attorneys for Plaintiff,
    LAURIE ORANGE

6

7

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                 COUNTY OF SAN DIEGO

10

11   LAURIE ORANGE                  Case No.   **37-2008-00080596-CU-IC-CTL**

12         vs.                 **COMPLAINT FOR:**

13   STANDARD INSURANCE COMPANY, a
    corporation; and DOES 1 through10,     **1.**   **BREACH OF THE DUTY OF**
14   inclusive,                      **GOOD FAITH AND FAIR**
                            **DEALING**
15

16            Defendants.       **2.**   **BREACH OF CONTRACT**

17                         **JURY DEMAND**

18

19                      **GENERAL ALLEGATIONS**

20         1.     Plaintiff, LAURIE ORANGE, at all relevant times herein, was and is a resident

21   and citizen of the County of San Diego, State of California.

22         2.     Defendant,   STANDARD   INSURANCE   COMPANY   (hereinafter

23   "STANDARD"), is, and at all relevant times herein was, a corporation authorized to transact, and

24   in fact transacting, the business of insurance in the State of California, County of San Diego.
25

26         3.     The true names and capacities, whether individual, corporate, associate, or

27   otherwise, of STANDARD and Does 1 through 10, inclusive, are unknown to plaintiff, who

28   therefore sues said defendants by such fictitious names. Plaintiff is informed and believes and

                                            Complaint

                                   *Ex 1 p 1*

LAW OFFICES OF
ROBERT K. SCOTT
A PROFESSIONAL CORPORATION
7700 IRVINE CENTER DRIVE, SUITE 605
IRVINE, CALIFORNIA 92618
TELEPHONE (949) 753-4950 FAX (949) 753-4949
EMAIL: mail@robertkscott.com www.robertkscott.com

thereon alleges that each defendant designated herein as a Doe is legally responsible in some manner for the events and happenings referred to herein and legally caused injury and damages proximately thereby to plaintiff. Plaintiff will seek leave of this Court to amend this Complaint to insert their true names and capacities in place and instead of the fictitious names when they become known to her.

4.     At all times herein mentioned, unless otherwise indicated, STANDARD'S personnel were the agents and employees of each of the remaining STANDARD employees. All STANDARD agents, employees and personnel were at all relevant times acting within the purpose and scope of said agency and employment, and STANDARD has ratified and approved the acts of its agents.

5.     At all times relevant herein, and commencing in approximately June of 1999, plaintiff was employed by the County of San Diego as a Senior Deputy County Counsel. Pursuant to her employment, plaintiff became covered under a policy of insurance issued by defendant, STANDARD, to the County of San Diego. Group policy No. 615407 (hereinafter "the Policy") was issued by defendant and provided coverage to plaintiff as an employee of the County, which coverage included benefits for long term disability. The Policy required the payment of benefits in the event plaintiff became totally disabled from her occupation. The Policy, at all times since its inception, has remained in force and all premiums due under the Policy have been paid, and all conditions on the part of plaintiff to be performed, including notice and due proof of loss, have been performed by plaintiff. A true and correct copy of the Policy is attached hereto as Exhibit A and incorporated herein by reference.

///

///

///

— 2 —

Complaint

*Ex 1 p 2*

LAW OFFICES OF
ROBERT K. SCOTT
A PROFESSIONAL CORPORATION
~ 7700 IRVINE CENTER DRIVE, SUITE 605
IRVINE, CALIFORNIA 92618
TELEPHONE (949) 753-4950  FAX (949) 753-4949
EMAIL: mail@robertkscott.com  www.robertkscott.com

LAW OFFICES OF
ROBERT K. SCOTT
A PROFESSIONAL CORPORATION
7700 IRVINE CENTER DRIVE, SUITE 605
IRVINE, CALIFORNIA 92618
TELEPHONE (949) 753-4950  FAX (949) 753-4949
EMAIL: mail@robertkscott.com  www.robertkscott.com

6.      As further described hereinafter, plaintiff suffered traumatic injuries which have culminated in her total disability.  Through a succession of automobile accidents dating back to approximately 1975, plaintiff suffered severe injuries to her back, which ultimately required spine fusion surgery in December of 1992.  Since that time, plaintiff again was involved in rear end automobile accidents which further injured her back and resulted in herniated cervical discs In approximately August of 2004, plaintiff's vehicle was rear-ended while in stop and go freeway traffic while plaintiff was en route to a work-related meeting.  This automobile accident caused plaintiff to suffer herniated discs, new bulges in lumbar discs that had been previously fused in 1992, and post-traumatic stress.  From 2004 through the present, plaintiff has suffered from intense back pain and left arm pain, along with a variety of other accident and non-accident related injuries and maladies, including dental implants necessitated by prior facial injuries in an automobile accident, and herniated cervical discs which resulted in pinched nerves down the left arm.  On or about January 30, 2006, plaintiff underwent cervical disc fusion surgery (at C5/C6 and C6/C7) with insertion of a titanium plate and cadaver bone to effectuate the fusion.  After a temporary absence from her employment, plaintiff returned to work on a part-time basis in March, and again in April, of 2006 but was only able to withstand the rigors of her employment for several days and was again off work until July 3, 2006.  Plaintiff again returned to part-time work at that time but the intense pain and fatigue caused plaintiff to cease work even on a part-time basis.  Plaintiff again was required to cease her employment in August of 2006, and has not returned to her employment since that time.  On August 13, 2007, plaintiff underwent yet a third spinal surgical procedure (lumbar fusion surgery).  Plaintiff has been, and remains, totally disabled to date.

7.      Following the forced cessation of her employment, plaintiff filed a claim with defendant for long-term total disability benefits, claim number 00391340.  In response to the

Ex 1  p 3

Complaint

LAW OFFICES OF
ROBERT K. SCOTT
A PROFESSIONAL CORPORATION
7700 IRVINE CENTER DRIVE, SUITE 805
IRVINE, CALIFORNIA 92618
TELEPHONE (949) 753-4950  FAX (949) 753-4949
EMAIL: mail@robertkscott.com  www.robertkscott.com

claim, and on or about February 7, 2007, STANDARD advised plaintiff that it was acknowledging her disability, but that it had concluded that her disability was caused by "degenerative disease of the cervical spine and carpal tunnel syndrome." The letter went on to advise that, pursuant to a "Musculoskeletal and Connective Tissue Disorder Limitation" allegedly applicable to her claim, STANDARD had determined that benefits were limited to 24 months, and that such benefits would expire on April 29, 2008.  In  response to that determination, plaintiff advised STANDARD that, as documented by multiple MRIs and x-rays, her disability was caused by herniated cervical discs, pointing out that she had undergone surgeries in December of 1992 and in January of 2006 to fuse herniated discs (with additional surgery in August of 2007 to fuse herniated lumbar discs).  She also pointed out to STANDARD at that time that the Musculoskeletal and Connective Tissue Disorder Limitation did not apply to herniated discs that are documented by electromyogram, computerized tomography or MRI.  In addition, plaintiff also explained that she was also disabled by radiculopathies that were documented by electromyogram, and that, as a result, the purported limitation on the long-term disability benefits was inapplicable.  Plaintiff articulated that, pursuant to documented reports of her treating and attending physicians, Dr. Larry Dodge, Dr. Charles K. Jablecki and Dr. Dori Cage, along with verifiable test results, she suffered from radiculopathies, and from herniated discs in the cervical and lumbar spine.  In addition, plaintiff has suffered from intense and chronic pain as the result of her back injuries.  Such chronic pain has required the significant use of narcotics and pain medication.  The pain and necessitated use of narcotics and pain medication has also caused plaintiff to be disabled and unable to continue in her employment activities.

8.     On or about May 16, 2007, STANDARD advised plaintiff that after a review of records of Dr. Dodge, it had determined that there was "...no evidence of a herniated disk in the cervical spine nor the lumbar spine" and that "[e]xaminations do not support a radiculopapthy in

Ex 1  p 4

Complaint

the upper extremities experienced by you." STANDARD refused to change its determination as to a 24 month limitation on benefits. From May of 2007 through November of 2007, plaintiff and STANDARD exchanged numerous letters concerning the application of the Musculoskeletal and Connective Tissue Disorder Limitation. In her letters, plaintiff repeatedly pointed out that her physicians had verified that she suffered from herniated discs and radiculopathies which clearly obviated application of the purported limitation. All such information was fundamentally ignored by STANDARD.

9.    On December 31, 2007, despite overwhelming evidence to the contrary, STANDARD advised plaintiff, by way of letter of that date, that the "...information in your claim file continues to confirm that you have been Disabled by degenerative disease of the cervical spine and carpal tunnel syndrome. Because degenerative disc disease of the cervical spine and carpal tunnel syndrome are musculoskeletal and connective tissue disorders as defined by the terms of the COUNTY OF SAN DIEGO Group Policy, The Standard has applied the Musculoskeletal and Connective Tissue Disorders Limitation to your claim." STANDARD further advised plaintiff at that time that, as benefits first became payable on April 30, 2006, the 24 month Maximum Benefit Period for Musculoskeletal and Connective Tissue Disorders will end on April 29, 2008.

10.    In November of 2007, plaintiff was examined by Dr. Michael P. Kimball for the purpose of a Service-Connected Disability Retirement Evaluation on behalf of the San Diego County Employees Retirement Association (SDCERA). This doctor, retained by the SDCERA, examined at length the numerous records and reports regarding plaintiff from literally dozens of treating and attending physicians. The conclusions of Dr. Kimball included the following: that plaintiff's cervical spine and left upper extremity complaints were the result of the 2004 motor vehicle accident, the existence of **left upper extremity radiculopathy** status post C5 to C7

LAW OFFICES OF
ROBERT K. SCOTT
A PROFESSIONAL CORPORATION
7700 IRVINE CENTER DRIVE, SUITE 605
IRVINE, CALIFORNIA 92618
TELEPHONE (949) 753-4950  FAX (949) 753-4949
EMAIL: mail@robertkscott.com  www.robertkscott.com

Ex 1 p 5    Complaint

LAW OFFICES OF
ROBERT K. SCOTT
A PROFESSIONAL CORPORATION
7700 IRVINE CENTER DRIVE, SUITE 605
IRVINE, CALIFORNIA 92618
TELEPHONE (949) 753-4950  FAX (949) 753-4949
EMAIL: mail@robertkscott.com  www.robertkscott.com

discectomy and fusion, that plaintiff continued to have a **left cervical radiculopathy** with residual left-sided weakness requiring ongoing pain medication, and that plaintiff's cervical spine and left upper extremity complaints precluded her from her full time employment duties. Based on the report and recommendations of Dr. Kimball, and other treating and examining physicians, the SDCERA, on February   22, 2008, found that plaintiff was and is "...permanently incapacitated physically for the full performance of her duties as a senior deputy county counsel," and the SDCERA **granted** plaintiff a Disability Retirement effective October 25, 2006.

11.    Despite the findings of disability, a disability resulting from herniated discs, radiculopathy, and chronic pain, STANDARD has steadfastly, and unreasonably, maintained a determination that plaintiff's claim is subject to a 24 month limitation, when no such limitation is appropriate or applicable.

12.    In addition to the refusal to acknowledge the true cause of plaintiff's disability, defendant has also failed and refused to approve a disability waiver of premiums under a life insurance policy issued by defendant to plaintiff.  Rather than properly approve such waiver of premiums, defendant has repeatedly indicated that it was "continuing to process" such a  waiver of premium claim, at a time when defendant had ample evidence to support a fully compensable disability which warranted the waiver of premiums.

## FIRST CAUSE OF ACTION

### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

13.    Plaintiff hereby incorporates by reference all of the allegations set forth in the General Allegations as though fully set forth herein.

14.    STANDARD has breached its duty of good faith and fair dealing owed to plaintiff

*Ex 1 p 6*    Complaint

in the following respects:

(a)    unreasonably and in bad faith refusing to acknowledge plaintiff's disability as one which bears no limitation under the Policy;

(b)    unreasonably refusing to accept the verified and documented determinations of plaintiff's treating and attending physicians that support a disability based on herniated discs, radiculopathies, and chronic pain which are not limited under the Policy;

(c)    unreasonably and in bad faith failing to properly adjust or determine plaintiff's existing disability;

(d)    unreasonably rejecting the opinions of plaintiff's treating physicians without proper medical evidence supporting its determination;

(e)    unreasonably and in bad faith misrepresenting to plaintiff pertinent facts and insurance policy provisions relating to the benefits due her;

(f)    failing to reasonably or timely process and investigate plaintiff's claim for long-term total disability benefits;

(g)    unreasonably and in bad faith failing to attempt to effectuate a prompt, fair, settlement of plaintiff's claim for long-term disability benefits when liability had become reasonably clear; and

(h)    failing and refusing to give equal considerations to plaintiff's interests as it has given to its own interests.

15.    Plaintiff is informed and believes and thereon alleges that defendant has breached its duty of good faith and fair dealing owed to plaintiff by other acts or omissions of which she is presently unaware. Plaintiff will seek leave of this Court to amend this Complaint at such time as she discovers the other acts or omissions of defendant constituting further breach of their express and implied contractual duties.

LAW OFFICES OF
ROBERT K. SCOTT
A PROFESSIONAL CORPORATION
7700 IRVINE CENTER DRIVE, SUITE 605
IRVINE, CALIFORNIA 92618
TELEPHONE (949) 753-4950  FAX (949) 753-4949
EMAIL: mail@robertkscott.com  www.robertkscott.com

Ex 1  p 7    Complaint

16.    As a proximate result of the aforementioned wrongful conduct of defendant, plaintiff has suffered, and will continue to suffer in the future, damages under the Policy, plus interest, for a total amount to be shown at the time of trial.

17.    As a further proximate result of the aforementioned wrongful conduct of defendant, plaintiff has suffered, and will continue to suffer, anxiety, worry, mental and emotional distress, and other incidental damages and out-of-pocket expenses, all to her general damages in a sum to be determined at the time of trial.

18.    As a further proximate result of the aforementioned wrongful conduct of defendant, plaintiff was compelled to retain legal counsel to obtain the benefits and coverage due under the Policy. Therefore, STANDARD is liable to plaintiff for those reasonable attorney fees necessarily incurred by her in order to obtain full and appropriate benefits under the Policy in a sum to be determined at the time of trial.

19.    Defendant's conduct described herein was intended to cause injury to plaintiff, or was undertaken by defendant with the substantial knowledge that injury was likely, and was despicable conduct carried on by the defendant with a willful and conscious disregard of the rights of plaintiff, subjecting her to cruel and unjust hardship in conscious disregard of her rights, and constituted intentional misrepresentations, deceit or concealment of material facts known to defendant with the intent to deprive plaintiff of property, legal rights, or to otherwise cause injury, such as to constitute malice, oppression, or fraud under California *Civil Code* §3294, thereby entitling her to punitive damages in an amount appropriate to punish or set an example of defendant.

///

///

///

LAW OFFICES OF
ROBERT K. SCOTT
A PROFESSIONAL CORPORATION
7700 IRVINE CENTER DRIVE, SUITE 605
IRVINE, CALIFORNIA 92618
TELEPHONE (949) 753-4950  FAX (949) 753-4949
E-MAIL: mail@robertkscott.com  www.robertkscott.com

— 8 —    *Ex 1 p 8*    Complaint

## SECOND CAUSE OF ACTION

### BREACH OF CONTRACT

20.     Plaintiff hereby incorporates each and every paragraph of the General Allegations as though fully set forth in this Cause of Action.

21.     STANDARD has anticipatorily breached the subject insurance contract by its wrongful determination that plaintiff's long-term disability benefits are limited under the Policy, due to the purported Musculoskeletal and Connective Tissue Disorders Limitation, even though no such limitation is applicable.  As a direct and proximate result of STANDARD'S breach of the insurance contract, plaintiff will suffer contractual damages under the terms and conditions of the Policy and other incidental damages and out-of-pocket expenses, all in a sum to be determined at the time of trial.

### PRAYER

WHEREFORE, plaintiff, prays for judgment against defendant, STANDARD INSURANCE COMPANY, as follows:

1.  Damages for its bad faith conduct and anticipatory breach of contract, plus interest, including pre-judgment interest, in a sum to be determined at the time of trial;

2.  General damages for mental and emotional distress and other incidental damages in a sum to be determined at the time of trial;

3.  Punitive and exemplary damages in an amount appropriate to punish or set an example of Defendants, STANDARD INSURANCE COMPANY,  (First Cause of Action);

4.  For pre-judgment interest at the appropriate legal rate;

5.  For costs of suit incurred herein;

LAW OFFICES OF
ROBERT K. SCOTT
A PROFESSIONAL CORPORATION
7700  IRVINE CENTER DRIVE, SUITE 605
IRVINE, CALIFORNIA 92618
TELEPHONE (949) 753-4950 · FAX (949) 753-4949
EMAIL: mail@robertkscott.com  www.robertkscott.com

Ex1 P9

Complaint

6.  For attorney fees damages incurred to obtain the benefits under the Policy in a sum to be determined at the time of trial (First Cause of Action); and

7.  For such other and further relief as the Court deems just and proper.

Dated:  March 17, 2008

LAW OFFICES OF ROBERT K. SCOTT

By

ROBERT K. SCOTT
D. SCOTT MOHNEY
Attorneys for Plaintiff,
LAURIE ORANGE

## JURY DEMAND

Plaintiff hereby demands a jury trial in this action.

Dated:  March 17, 2008

LAW OFFICES OF ROBERT K. SCOTT

By

ROBERT K. SCOTT
D. SCOTT MOHNEY
Attorneys for Plaintiff,
LAURIE ORANGE

LAW OFFICES OF
ROBERT K. SCOTT
A PROFESSIONAL CORPORATION
7700 IRVINE CENTER DRIVE, SUITE 605
IRVINE, CALIFORNIA 92618
TELEPHONE (949) 753-4950 FAX (949) 753-4849
E-MAIL: mail@robertkscott.com  www.robertkscott.com

Ex 1  p 10

Complaint

# EXHIBIT A

Ex 1 p 11

# County of San Diego

## CERTIFICATE:

## LONG TERM DISABILITY INCOME BENEFIT PLAN

Plan Sponsor has established a long term disability income benefit plan. Plan Sponsor is solely responsible for payment of LTD Benefits payable under the terms of the Plan during the Self-Funded Period. Standard Insurance Company is solely responsible for payment of LTD Benefits payable under the Plan during the Insured Period, according to the terms of the Group Policy.

Plan Sponsor has retained Standard as Claims Administrator for the Plan during the Self-Funded Period. Standard shall receive, process, investigate and evaluate claims for benefits. Standard has discretionary authority to make decisions to approve, deny or close claims for benefits. Standard is also authorized to review and decide appeals of denied or closed claims, if requested by claimants as provided in the appeal provision of the Plan.

Standard has no authority or obligation with respect to management or investment of the assets of the Plan, other than the Group Policy.

You will be covered as provided by the terms of the Plan. Possession of this Certificate does not necessarily mean you are covered. You are covered only if you meet the requirements set out in this Certificate.

Plan Sponsor has the right at anytime to amend or terminate the Plan or to require or change the amount of Member contributions. If your coverage is changed by an amendment to the Plan, Plan Sponsor will provide you with a revised Certificate or other notice. No agent has authority to change the Plan or to waive any of its provisions.

"You" and "your" mean the Member. "We", "us", and "our" mean Plan Sponsor and include Standard during the Insured Period and during any period you are claiming LTD Benefits from Standard. Other defined terms appear with their initial letters capitalized. Section headings, and references to them, appear in boldface type.

PC190-LTD-H

Ex 1 p 12

# Table of Contents

COVERAGE FEATURES ............................................................................................................1
    GENERAL PLAN INFORMATION ..................................................................................1
    BECOMING COVERED ....................................................................................................1
    SCHEDULE OF COVERAGE ...........................................................................................2
    DISABILITY PROVISIONS..............................................................................................2
    EXCLUSIONS AND LIMITATIONS ...............................................................................3
    DEDUCTIBLE INCOME ...................................................................................................3
    OTHER BENEFITS............................................................................................................3
    MEMBER CONTRIBUTIONS..........................................................................................4
STATEMENT OF COVERAGE...............................................................................................5
DEFINITION OF DISABILITY ...............................................................................................5
RETURN TO WORK INCENTIVE .........................................................................................6
TEMPORARY RECOVERY.....................................................................................................6
WHEN LTD BENEFITS END ..................................................................................................7
PREDISABILITY EARNINGS.................................................................................................7
DEDUCTIBLE INCOME..........................................................................................................8
EXCEPTIONS TO DEDUCTIBLE INCOME .........................................................................8
RULES FOR DEDUCTIBLE INCOME ...................................................................................9
SURVIVORS BENEFIT..........................................................................................................10
WAIVER OF CONTRIBUTIONS...........................................................................................10
BENEFITS AFTER COVERAGE ENDS OR IS CHANGED ...............................................10
EFFECT OF NEW DISABILITY ...........................................................................................11
EXCLUSIONS .........................................................................................................................11
LIMITATIONS ........................................................................................................................11
CLAIMS ...................................................................................................................................14
SUBROGATION ......................................................................................................................15
ALLOCATION OF AUTHORITY..........................................................................................15
TIME LIMITS ON LEGAL ACTIONS...................................................................................16
INCONTESTABILITY PROVISIONS....................................................................................16
CONTINUITY OF COVERAGE.............................................................................................16
WHEN YOUR COVERAGE BECOMES EFFECTIVE.........................................................16
ACTIVE WORK PROVISIONS..............................................................................................16
STRIKE CONTINUATION .....................................................................................................17
WHEN YOUR COVERAGE ENDS........................................................................................18
REINSTATEMENT OF COVERAGE ....................................................................................18
DEFINITIONS .........................................................................................................................18

Ex 1 p 13

# Index of Defined Terms

The page number shown below is where the term is defined.  For terms defined by an entire section, the page number below is the page on which that section begins.

Active Work, Actively at Work, 17
Any Occupation Definition of Disability, 5
Any Occupation Income Level, 2
Any Occupation Period, 2

Benefit Waiting Period, 2, 18

Contributory, 18
CPI-W, 18

Deductible Income, 8
Disability, 5
Disabled, 5

Eligibility Waiting Period, 18
Employer, 1
Exclusion Period, 3

Group Policy, 18
Group Policy Effective Date, 1
Group Policy Number, 1

Hospital, 12

Indexed Predisability Earnings, 18
Injury, 18
Insured Period, 2, 19

Limitation Period, 3
LTD Benefit, 19

Material Duties, 5
Maximum Benefit Period, 2, 19
Maximum LTD Benefit, 2
Member, 1
Mental Disorder, 12
Minimum Benefit, 2

Noncontributory, 19

Own Occupation, 5
Own Occupation Definition Of Disability, 5
Own Occupation Income Level, 2
Own Occupation Period, 2

Partial Disability, 5
Physical Disease, 19
Physician, 19
Plan, 19
Plan Effective Date, 1
Plan Sponsor, 1
Predisability Earnings, 7
Preexisting Condition, 11
Preexisting Condition Period, 3
Pregnancy, 19
Prior Plan, 19
Proof Of Loss, 14

Recovery, 6
Return To Work Incentive, 6

Salary Continuation Offset, 3
Self-Funded Period, 2, 19
Spouse, 19
Strike Continuation, 3

War, 11
Work Earnings, 6

Ex 1  p 14

# COVERAGE FEATURES

This section contains many of the features of your long term disability (LTD) coverage. Other provisions, including exclusions, limitations, and Deductible Income, appear in other sections. Please refer to the text of each section for full details. The Table of Contents and the Index of Defined Terms help locate sections and definitions.

## GENERAL PLAN INFORMATION

| | |
|---|---|
| Plan Sponsor: | County of San Diego |
| Employer: | County of San Diego |
| ASO Number: | 615408-A |
| Plan Effective Date: | October 1, 1993 |
| Group Policy Number: | 615407-B |
| Group Policy Effective Date: | October 1, 1993 |
| Claims Administrator: | Standard Insurance Company |

Plan Sponsor has appointed Standard to act on its behalf as Claims Administrator for the Plan during the Self-Funded Period and has delegated to Standard final discretionary authority to adjudicate claims for benefits, including the right to determine eligibility for coverage, entitlement to benefits and the amount of benefits payable, and to interpret the Plan and resolve all questions arising in the administration, interpretation, and application of the Plan, as described in the **Allocation Of Authority** section. Plan Sponsor is solely responsible for payment of LTD Benefits payable under the Plan during the Self-Funded Period, according to the terms of the Plan. Standard is solely responsible for payment of LTD Benefits payable under the Plan during the Insured Period, according to the terms of the Group Policy.

Standard will also perform certain administrative services for the Plan, including advising and assisting Plan Sponsor with preparation and revision of the Plan and providing actuarial services. Standard has no authority or obligation with respect to management or investment of the assets of the Plan, other than the Group Policy, or Plan Sponsor's right of subrogation under the Plan.

## BECOMING COVERED

To become covered you must: (a) Be a Member; (b) Complete your Eligibility Waiting Period; and (c) Meet the requirements in **Active Work Provisions** and **When Your Coverage Becomes Effective.**

Definition Of Member:

You are a Member if you are:

1. An active employee of the Employer who is (a) in a position designated by the Employer as eligible for Benefit Plan 02 and is represented by a union or employee organization, or (b) in a position designated by the Employer as eligible for Benefit Plan 04;

2. Regularly scheduled to work at least 40 hours on a bi-weekly basis; and

3. A citizen or resident of the United States or Canada.

You are not a Member if you are:

1. A temporary or seasonal employee; or

2.   A full time member of the armed forces of any country.

Eligibility Waiting Period:   You are eligible on the later of:

1.   The Plan Effective Date; and

2.   The first day of the calendar month following your first day as a Member.

## SCHEDULE OF COVERAGE

LTD Benefit:   66 2/3% of the first $12,000 of your Predisability Earnings, reduced by Deductible Income.

Maximum:   $8,000 before reduction by Deductible Income.

Minimum:   100 or 10% of your LTD Benefit before reduction by Deductible Income, whichever is greater.

Benefit Waiting Period:   The longer of (a) 90 days, and (b) the end of the period of sick leave, vacation pay and FLSA compensatory time to which you are entitled from the Employer.

Self-Funded Period:   365 days from the date of Disability.

Insured Period:   Begins at the end of the Self-Funded Period and ends at the end of the Maximum Benefit Period.

Maximum Benefit Period:   Determined by your age when Disability begins, as follows:

| Age | Maximum Benefit Period |
|---|---|
| 61 or younger | To age 65, or 3 years 6 months, if longer |
| 62 | 3 years 6 months |
| 63 | 3 years |
| 64 | 2 years 6 months |
| 65 | 2 years |
| 66 | 1 year 9 months |
| 67 | 1 year 6 months |
| 68 | 1 year 3 months |
| 69 or older | 1 year |

## DISABILITY PROVISIONS

Own Occupation Period:   The first 24 months for which LTD Benefits are paid.

Any Occupation Period:   From the end of the Own Occupation Period to the end of the Maximum Benefit Period.

Partial Disability:   Covered

Own Occupation Income Level:   80% of your Indexed Predisability Earnings

Any Occupation Income Level:   80% of your Indexed Predisability Earnings

See **Definition of Disability** for more information.

*Ex 1 p 16*   615408-A

## EXCLUSIONS AND LIMITATIONS

| | |
|---|---|
| Preexisting Condition Exclusion: | Yes |
| Preexisting Condition Period: | The 90-day period just before your coverage becomes effective. |
| Exclusion Period: | 12 months |
| Chronic Fatigue Conditions Limitation: | Yes |
| Limitation Period: | 24 months |
| Chemical And Environmental Sensitivities Limitation: | Yes |
| Limitation Period: | 24 months |
| Musculoskeletal And Connective Tissue Disorder Limitation: | Yes |
| Limitation Period: | 24 months |

See **Exclusions** and **Limitations** for these and other exclusions and limitations.

## DEDUCTIBLE INCOME

| | |
|---|---|
| Social Security Offset: | Primary Offset |
| Salary Continuation Offset: | Sick Pay, vacation pay or FLSA compensatory time or other salary continuation payable to you by your Employer or donated to you by another employee. |

See **Deductible Income** for this and other Deductible Income.

## OTHER BENEFITS

| | |
|---|---|
| Survivors Benefit Amount: | A lump sum equal to 3 times your LTD Benefit without reduction by Deductible Income. |
| Estate Payment Allowed: | No |
| Leave of Absence Provision: | Coverage is continued while on a leave of absence scheduled to last six months or less. You must agree to pay the required premium contributions to the Employer on or before each Premium Due Date during a leave of absence for Insurance to be continued. |
| Continuity of Coverage: | Yes |
| Strike Continuation: | Yes. The Strike Continuation premium percentage is 120% of the Premium Rate. |
| Predisability Earnings based on: | Earnings in effect on your last full day of Active Work. |

Ex ( p 17   615408-A

## MEMBER CONTRIBUTIONS

Coverage is:                                          Noncontributory

The Plan Sponsor determines the amount of each Member's contribution, if any, toward the cost of coverage under the Plan.

When an Employer pays the premium for disability coverage and/or pays the benefits from Employer assets on a self-funded plan, then benefits are subject to income taxation and, during the first six months of disability, FICA taxes. 25% of benefits will be withheld to pay these taxes.

# STATEMENT OF COVERAGE

If you become Disabled while covered under the Plan, we will pay LTD Benefits according to the terms of the Plan after we receive satisfactory Proof Of Loss.  Plan Sponsor is solely responsible for payment of LTD Benefits during the Self-Funded Period.   Standard is solely responsible for payment of LTD Benefits during the Insured Period.

ASJC.02

# DEFINITION OF DISABILITY

You are Disabled if you meet one of the following definitions during the period it applies:

    A.  Own Occupation Definition of Disability;

    B.  Any Occupation Definition of Disability; or

    C. . Partial Disability Definition.

Own Occupation means any employment, business, trade, profession, calling or vocation that involves Material Duties of the same general character as your regular and ordinary employment with the Employer. Your Own Occupation is not limited to your job with your Employer.

Material Duties means the essential tasks, functions and operations, and the skills, abilities, knowledge, training and experience, generally required by employers from those engaged in a particular occupation.

A.  OWN OCCUPATION DEFINITION OF DISABILITY

    During the Benefit Waiting Period and the Own Occupation Period you are required to be Disabled only from your Own Occupation.

    You are Disabled from your Own Occupation if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder, you are unable to perform with reasonable continuity the Material Duties of your Own Occupation.

B. . ANY OCCUPATION DEFINITION OF DISABILITY

    During the Any Occupation Period you are required to be Disabled from all occupations.

    You are Disabled from all occupations if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder, you are unable to perform with reasonable continuity the Material Duties of any gainful occupation for which you are reasonably fitted by education, training and experience.

C.  PARTIAL DISABILITY DEFINITION

    1.  During the Benefit Waiting Period and the Own Occupation Period, you are Partially Disabled when you work in your Own Occupation but, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder, you are unable to earn the Own Occupation Income Level or more.

    2.  During the Any Occupation Period, you are Partially Disabled when you work in an occupation but, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder, you are unable to earn the Any Occupation Income Level, or more, in that occupation and in all other occupations for which you are reasonably fitted under the Any Occupation Definition of Disability.

You may work in another occupation while you meet the Own Occupation Definition of Disability. If you are Disabled from your Own Occupation, there is no limit on your Work Earnings in another occupation. Your Work Earnings may be Deductible Income. See Return To Work Incentive and Deductible Income.

Your Any Occupation Period, Any Occupation Income Level, Own Occupation Period, and Own Occupation Income Level are shown in the **Coverage Features**.

LT.DD.49X

# RETURN TO WORK INCENTIVE

A.  During The Benefit Waiting Period

You may serve your Benefit Waiting Period while working, if you meet either the Own Occupation Definition of Disability or the Partial Disability Definition.

B.  After The Benefit Waiting Period

You are eligible for the Return to Work Incentive on the first day you work after the Benefit Waiting Period if LTD Benefits are payable on that date. The Return To Work Incentive changes 12 months after that date, as follows:

1.  During the first 12 months, your Work Earnings will be Deductible Income as determined below:

    a.  Determine the amount of your LTD Benefit as if there were no Deductible Income, and add your Work Earnings to that amount.

    b.  Determine 100% of your Indexed Predisability Earnings.

    c.  If a. is greater than b., the difference will be Deductible Income.

2.  After those first 12 months, one half of your Work Earnings will be Deductible Income.

Work Earnings means your gross monthly earnings from work you perform while Disabled, including earnings from your Employer, any other employer, or self-employment.

LT.RW.01

# TEMPORARY RECOVERY

You may temporarily recover from your Disability, and then become Disabled again from the same cause or causes, without having to serve a new Benefit Waiting Period. Temporary Recovery means you cease to be Disabled for less than the applicable Allowable Period. See **Definition Of Disability**.

A.  Allowable Periods

1.  During the Benefit Waiting Period: a total of 30 days of recovery.

2.  During the Maximum Benefit Period: 180 days for each period of recovery.

B.  Effect of Temporary Recovery

If your Temporary Recovery does not exceed the Allowable Periods, 1 through 5 below will apply.

1.  The Predisability Earnings used to determine your LTD Benefit will not change.

2.  The period of Temporary Recovery will not count toward your Benefit Waiting Period, your Maximum Benefit Period, your Own Occupation Period, or the Self-Funded Period.

3.  No LTD Benefits will be payable for the period of Temporary Recovery.

4.  No LTD Benefits will be payable after benefits become payable to you under any other group long term disability plan or group long term disability insurance policy under which you become covered during your period of Temporary Recovery.

*Ex1 p20* 615-108-A

5. Except as stated above, the provisions of the Plan will be applied as if there had been no interruption of your Disability.

AS.TR.01X

## WHEN LTD BENEFITS END

Your LTD Benefits end automatically on the earliest of:

1. The date you are no longer Disabled.

2. The date your Maximum Benefit Period ends.

3. The date you die.

4. The date benefits become payable under any other group long term disability plan or group long term disability insurance policy under which you become covered during a period of Temporary Recovery.

AS.BE.01

## PREDISABILITY EARNINGS

Your Predisability Earnings will be based on your earnings in effect on your last full day of Active Work unless a different date applies (see the **Coverage Features**). Any subsequent change in your earnings will not affect your Predisability Earnings.

Predisability Earnings means your monthly basic rate of earnings from your Employer.

Predisability Earnings include:

1. Contributions you make through a salary reduction agreement with your Employer to an IRC Section 401(k), 403(b), 408(k) or 457 deferred compensation arrangement.

2. Amounts contributed to your fringe benefits according to a salary reduction agreement under an IRC Section 125 plan.

Predisability Earnings does not include:

1. Bonuses.

2. Overtime pay.

3. Your Employer's contributions on your behalf to any deferred compensation arrangement or pension plan.

4. Contributions you make through a salary reduction agreement with your Employer to an executive nonqualified deferred compensation arrangement.

5. Commissions.

6. Shift differential pay.

7. Any other extra compensation.

If you are paid on an annual contract basis, your monthly rate of earnings is one-twelfth (1/12th) of your annual contract salary.

If you are paid hourly, your monthly rate of earnings is based on your hourly pay rate multiplied by the number of hours you are regularly scheduled to work per month, but not more than 173 hours. If you do not have regular work hours, your monthly rate of earnings is based on the average number of hours you worked

per month during the preceding 12 calendar months (or during your period of employment if less than 12 months), but not more than 173 hours.

If you are paid on a biweekly rate basis, your monthly rate of earnings is based on your biweekly pay rate (determined by the time you are regularly scheduled to work each biweekly period) multiplied by 26 and divided by 12. If you are not regularly scheduled to work an established schedule, your monthly rate of earnings shall be determined based upon your hourly rate in accordance with the preceding paragraph.

LT.PD.13X

# DEDUCTIBLE INCOME

Subject to **Exceptions To Deductible Income**, Deductible Income means:

1.  Sick pay, vacation pay, FLSA compensatory time or other salary continuation as shown in the **Coverage Features**.

2.  Your Work Earnings, as described in the **Return To Work Incentive**.

3.  Any amount you receive or are eligible to receive because of your disability under any workers' compensation law or similar law, including amounts for partial or total disability, whether temporary, or vocational.

4.  Any amount you receive or are eligible to receive because of your disability or retirement under:

    a.  The Federal Social Security Act;

    b.  The Canada Pension Plan;

    c.  The Quebec Pension Plan; or

    d.  Any similar plan or act.

    Primary offset: Primary benefits are Deductible Income, but dependents benefits are not.

5.  Any amount you receive or are eligible to receive because of your disability under any state disability income benefit law or similar law.

6.  Any amount you receive or are eligible to receive because of your disability under any other group insurance coverage.

7.  Any disability or retirement benefits you receive or are eligible to receive under any employer's retirement plan, including a public employee retirement system, a state teacher retirement system, and a plan arranged and maintained by a union or employee association for the benefit of its members.

    If any of these plans has two or more payment options, the option which comes closest to providing you a monthly income for life with no survivors benefit will be Deductible Income, even if you choose a different option.

8.  Any amount you receive by compromise, settlement, or other method as a result of a claim for any of the above, whether disputed or undisputed.

LT.DI.02X

# EXCEPTIONS TO DEDUCTIBLE INCOME

Deductible Income does not include:

Revised 5/26/05                                        - 8 -                    Ex 1 p 22  615408-A

1. Any cost of living increase in any Deductible Income other than Work Earnings, if the increase becomes effective while you are Disabled and while you are eligible for the Deductible Income.

2. Reimbursement for hospital, medical, or surgical expense.

3. Reasonable attorneys fees incurred in connection with a claim for Deductible Income.

4. Benefits from any individual disability insurance policy.

5. California Workers' Compensation benefits for permanent total or permanent partial disability.

6. Early retirement benefits under the Federal Social Security Act which are not actually received.

7. Group credit or mortgage disability insurance benefits.

8. Accelerated benefits paid under a life insurance policy.

9. Benefits from a through h below:

   a. Profit sharing plan.

   b. Thrift or savings plan.

   c. Deferred compensation plan.

   d. Plan under IRC Section 401(k), 408(k), or 457.

   e. Individual Retirement Account (IRA).

   f. Tax Sheltered Annuity (TSA) under IRC Section 403(b).

   g. Stock ownership plan.

   h. Keogh (HR-10) plan.

10. Pay you receive for the first 8 hours of vacation time per month which is donated to you by another employee.

LT.ED.06X

# RULES FOR DEDUCTIBLE INCOME

A. Monthly Equivalents

Each month we will determine your LTD Benefit using the Deductible Income for the same monthly period, even if you actually receive the Deductible Income in another month.

If you are paid Deductible Income in a lump sum or by a method other than monthly, we will determine your LTD Benefit using a prorated amount. We will use the period of time to which the Deductible Income applies. If no period of time is stated, we will use a reasonable one.

B. Your Duty To Pursue Deductible Income

You must pursue Deductible Income for which you may be eligible. We may ask for written documentation of your pursuit of Deductible Income. You must provide it within 60 days after we mail you our request. Otherwise, we may reduce your LTD Benefits by the amount we estimate you would be eligible to receive upon proper pursuit of the Deductible Income.

C. Pending Deductible Income

We will not deduct pending Deductible Income until it becomes payable. You must notify us of the amount of the Deductible Income when it is approved. You must repay us for the resulting overpayment of your claim.

Revised 5/26/05                                    - 9 -              Ex 1 p 23        615408-A

D. Overpayment Of Claim

We will notify you of the amount of any overpayment of your claim. You must immediately repay us. You will not receive any LTD Benefits until we have been repaid in full. In the meantime, any LTD Benefits paid, including the Minimum LTD Benefit, will be applied to reduce the amount of the overpayment. We may charge you interest at the legal rate for any overpayment which is not repaid within 30 days after we first mail you notice of the amount of the overpayment.

AS.RU.01

## SURVIVORS BENEFIT

If you die while LTD Benefits are payable, we will pay a Survivors Benefit according to 1 through 4 below.

1. The amount of the Survivors Benefit is shown in the **Coverage Features**.

2. The Survivors Benefit will first be applied to reduce any overpayment of your claim.

3. The Survivors Benefit will be paid at our option to any one or more of the following:

   a. Your surviving Spouse;

   b. Your surviving unmarried children under age 25; or

   c. Any person providing the care and support of any of them.

4. If you are not survived by a Spouse or an unmarried child under age 25, no Survivors Benefit will be paid unless payment to your estate is allowed as stated in the **Coverage Features**.

LT.SB.01

## WAIVER OF CONTRIBUTIONS

While LTD Benefits are payable, your coverage will be continued without payment of premiums or Member contributions.

AS.WP.02

## BENEFITS AFTER COVERAGE ENDS OR IS CHANGED

Your right to receive LTD Benefits for a period of Disability which begins while you are covered will not be affected by:

1. Termination of the Plan after you become Disabled; or

2. Termination of your coverage while the Plan remains in force; or

3. Any amendment to the Plan approved after the date you become Disabled.

AS.BA.02

Revised 5/26/05                                    - 10 -                    *Ex 1 p.24*        615408-A

## EFFECT OF NEW DISABILITY

If a period of Disability is extended by a new cause while LTD Benefits are payable, LTD Benefits will continue while you remain Disabled. However, 1 and 2 apply.

1. LTD Benefits will not continue beyond the end of the original Maximum Benefit Period.

2. All provisions of the Group Policy, including the **Exclusions** and **Limitations** sections, will apply to the new cause of Disability.

LT.ND.01

## EXCLUSIONS

A. War

You are not covered for a Disability caused or contributed to by War or any act of War. War means declared or undeclared war, whether civil or international, and any substantial armed conflict between organized forces of a military nature.

B. Intentionally Self-Inflicted Injury

You are not covered for a Disability caused or contributed to by an intentionally self-inflicted Injury, while sane or insane.

C. Preexisting Condition

   1. Definition

   Preexisting Condition means a mental or physical condition for which you have done any of the following at any time during the Preexisting Condition Period shown in the Coverage Features:

     a. Consulted a Physician;

     b. Received medical treatment or services; or

     c. Taken prescribed drugs or medications.

   2. Exclusion

   You are not covered for a Disability caused or contributed to by a Preexisting Condition or medical or surgical treatment of a Preexisting Condition unless, on the date you become Disabled, you:

     a. Have been continuously covered under the Plan for the entire Exclusion Period shown in the **Coverage Features**; and

     b. Have been Actively At Work for at least one full day after the end of the Exclusion Period.

AS.EX.01

## LIMITATIONS

A. Care Of A Physician

You must be under the ongoing care of a Physician during the Benefit Waiting Period. No LTD Benefits will be paid for any period of Disability when you are not under the ongoing care of a Physician.

B.  Mental Disorder

Payment of LTD Benefits is limited to 24 months for each period of continuous Disability caused or contributed to by a Mental Disorder. However, if you are confined in a Hospital at the end of the 24 months, this limitation will not apply while you are continuously confined.

Mental Disorder means any mental, emotional, behavioral, psychological, personality, cognitive, mood or stress- related abnormality, disorder, disturbance, dysfunction or syndrome, regardless of cause, including any biological or biochemical disorder or imbalance of the brain. Mental Disorder includes, but is not limited to, bipolar affective disorder, organic brain syndrome, schizophrenia, psychotic illness, manic depressive illness, depression and depressive disorders, or anxiety and anxiety disorders.

Hospital means a legally operated hospital providing full- time medical care and treatment under the direction of a full-time staff of licensed Physicians. Rest homes, nursing homes, convalescent homes, homes for the aged, and facilities primarily affording custodial, educational, or rehabilitative care are not Hospitals.

C.  Alcohol Use, Alcoholism Or Drug Use

Payment of LTD Benefits is limited to 24 months during your entire lifetime for a Disability caused or contributed to by your use of alcohol, alcoholism, use of any drug, including hallucinogens, or drug addiction.

D.  Rehabilitation

No LTD Benefits will be paid for any period of Disability when you are not participating in good faith in a plan, program or course of medical treatment or vocational training or education approved by us unless your Disability prevents you from participating.

E.  Musculoskeletal And Connective Tissue Disorder

Payment of LTD Benefits is limited to the Musculoskeletal And Connective Tissue Disorder Limitation Period shown in **Coverage Features** during your entire lifetime for a Disability caused or contributed to by musculoskeletal or connective tissue disorders including, but not limited to:

1.  Any disease or disorder of the cervical, thoracic, or lumbosacral back and its surrounding soft tissue.

2.  Sprains or strains of joints or muscles.

3.  Carpal tunnel or repetitive motion syndrome.

4.  Fibromyalgia.

5.  Temporomandibular joint or craniomandibular joint disorder.

6.  Myofascial pain.

7.  Arthritis.

This limitation will not apply to:

a.  Herniated discs with neurological abnormalities that are documented by electromyogram, and computerized tomography or magnetic resonance imaging.

b.  Scoliosis.

c.  Tumors, malignancies, or vascular malformations.

d.  Radiculopathies that are documented by electromyogram.

e.  Spondylolisthesis, grade II or higher.

f.  Myelopathies and myelitis.

g.  Demyelinating diseases.

Ex 1 p 26

h.  Traumatic spinal cord necrosis.

i.  Osteopathies.

j.  Rheumatoid or psoriatic arthritis.

k.  Lupus.

F.  Chronic Fatigue Conditions

Payment of LTD Benefits is limited to the Limitation Period for Chronic Fatigue Conditions shown in **Coverage Features** during your entire lifetime for a Disability caused or contributed to by chronic fatigue conditions including, but not limited to:

1.  Chronic Fatigue Syndrome.

2.  Chronic Fatigue Immunodeficiency Syndrome.

3.  Post Viral Syndrome.

4.  Limbic Encephalopathy.

5.  Epstein-Barr virus infection.

6.  Herpesvirus type 6 infection.

7.  Myalgic Encephalomyelitis.

This limitation will not apply to clinical conditions where a cause for the chronic fatigue is otherwise identifiable, such as:

a.  Neoplastic disorders.

b.  Neurological disorders.

c.  Endocrine disorders.

d.  Hematological disorders.

e.  Rheumatologic disorders.

f.  Depression.

G.  Chemical And Environmental Sensitivities

Payment of LTD Benefits is limited to the Limitation Period for Chemical And Environmental Sensitivities shown in **Coverage Features** during your entire lifetime for a Disability caused or contributed to by an allergy or sensitivity to chemicals or the environment including, but not limited to:

1.  Environmental allergies.

2.  Sick Building Syndrome.

3.  Multiple Chemical Sensitivity Syndrome.

4.  Chronic Toxic Encephalopathy.

This limitation will not apply to:

a.  Asthma.

b.  Allergy-induced reactive lung disease.

LT LM.75X

Revised 5/26/05

- 13 -

Ex 1 p 27    615408-A

# CLAIMS

**A.  Filing A Claim**

Claims should be filed on our forms.  If you do not receive our forms within 15 days after you ask for them, you may submit your claim in a letter to us.  The letter should include the date disability began, and the cause and nature of the disability.

**B.  Time Limits On Filing Proof Of Loss**

You must give us Proof Of Loss within 90 days after the end of the Benefit Waiting Period.  If you cannot do so, you must give it to us as soon as reasonably possible, but not later than one year after that 90-day period.  If Proof Of Loss is filed outside these time limits, your claim will be denied.  These limits will not apply while you lack legal capacity.

**C.  Proof Of Loss**

Proof Of Loss means written proof that you are Disabled and entitled to LTD Benefits.  Proof Of Loss must be provided at your expense.

**D.  Documentation**

At your expense, you must submit completed claims statements, your signed authorization for us to obtain information, and any other items we may reasonably require in support of your claim.  If you do not provide the documentation within 60 days after we mail you our request, your claim may be denied.

**E.  Investigation Of Claim**

We may investigate your claim at any time.

At our expense, we may have you examined at reasonable intervals by specialists of our choice.  We may deny or suspend LTD Benefits if you fail to attend an examination or cooperate with the examiner.

**F.  Time Of Payment**

We will pay LTD Benefits within 60 days after you satisfy Proof Of Loss.

LTD Benefits will be paid to you at the end of each month you qualify for them.  LTD Benefits remaining unpaid at your death will be paid to the person(s) receiving the Survivor Benefit.  If no Survivor Benefit is paid, the unpaid LTD Benefits will be paid to your estate.

**G.  Notice Of Decision On Claim**

You will receive a written decision on your claim within a reasonable time after we receive your claim.

If you do not receive our decision within 90 days after we receive your claim, you will have an immediate right to request a review as if your claim had been denied.

If we deny any part of your claim, you will receive a written notice of denial containing:

1.  The reasons for our decision;

2.  Reference to the parts of the Plan on which our decision is based;

3.  A description of any additional information needed to support your claim; and

4.  Information concerning your right to a review of our decision.

**H.  Review Procedure**

You must request in writing a review of a denial of all or part of your claim within 60 days after you receive notice of the denial.

When you request a review, you may send us written comments or other items to support your claim. You may review any non-privileged information that relates to your request for review.

*Ex 1 p 28*   615408-A

We will review your claim promptly after we receive your request. We will send you a notice of our decision within 60 days after we receive your request, or within 120 days if special circumstances require an extension. We will state the reasons for our decision and refer you to the relevant parts of the Plan.

I.  Assignment

The rights and benefits under the Plan are not assignable.

AS.CL.01

## SUBROGATION

If LTD Benefits are paid or payable to you under the Plan as the result of the act or omission of a third party, we will be subrogated to all rights of recovery you may have in respect to such act or omission. You must execute and deliver to us such instruments and papers as may be required and do whatever else is needed to secure such rights. You must avoid doing anything that would prejudice our rights of subrogation.

If suit or action is filed, we may record a notice of payment of LTD Benefits, and such notice shall constitute a lien on any judgement recovered, less a pro rata share of the costs of recovery, including attorney fees.

If you or your legal representative fail to bring suit or action promptly against such third party, we may institute such suit or action in our own name or in your name. We are entitled to retain from any judgement recovered the amount of LTD Benefits paid or to be paid to you or on your behalf, together with our costs of recovery, including attorney fees. The remainder of such recovery, if any, shall be paid to you or as the court may direct.

AS.SU.01

## ALLOCATION OF AUTHORITY

We have full and exclusive authority to control and manage the Plan, to administer claims, and to interpret the Plan and resolve all questions arising in the administration, interpretation, and application of the Plan.

Our authority includes, but is not limited to:

1.  The right to resolve all matters when a review has been requested;

2.  The right to establish and enforce rules and procedures for the administration of the Plan and any claim under it;

3.  The right to determine:

    a.  Eligibility for coverage;

    b.  Entitlement to benefits;

    c.  Amount of benefits payable;

    d.  Sufficiency and the amount of information we may reasonably require determining a., b., or c., above.

Subject to the review procedures of the Plan, any decision we make in the exercise of our authority is conclusive and binding.

AS.AL.01

## TIME LIMITS ON LEGAL ACTIONS

No action at law or in equity may be brought until 60 days after you have given us Proof Of Loss.  No such action may be brought more than three years after the earlier of:

1.   The date we receive Proof Of Loss; and

2.   The end of the period within which Proof Of Loss is required to be given.

LT.TL.01

## INCONTESTABILITY PROVISIONS

Any statement you make to obtain coverage is a representation and not a warranty.

No misrepresentation by you will be used to reduce or deny your claim or contest the validity of your coverage unless:

1.   Your coverage would not have been approved if we had known the truth; and

2.   We have given you a copy of a written instrument signed by you, which contains your misrepresentation.

After your coverage has been in effect for two years, we will not use a misrepresentation by you to reduce or deny your claim, unless it was a fraudulent misrepresentation.

AS.IN.01

## CONTINUITY OF COVERAGE

If your Disability is subject to the Preexisting Condition Exclusion, LTD Benefits will be payable if:

1.   You were covered under the Prior Plan on the day before the effective date of your Employer's coverage under the Plan;

2.   You became covered under the Plan when your coverage under the Prior Plan ceased;

3.   You were continuously covered under the Plan from the effective date of your Employer's coverage under the Plan through the date you became Disabled from the Preexisting **Condition**; and

4.   Benefits would have been payable under the Prior Plan if it had remained in force, taking into account the preexisting condition exclusion, if any, of the Prior Plan.

Payment of your LTD Benefit will be under the terms of the Prior Plan or the Plan, whichever pays less.

AS.CC.01

## WHEN YOUR COVERAGE BECOMES EFFECTIVE

The **Coverage Features** states your coverage is Noncontributory.

A.  Noncontributory Coverage

Subject to the **Active Work Provisions**, your Noncontributory coverage becomes effective on the date you become eligible.

AS.EF 01X

# ACTIVE WORK PROVISIONS

A. Active Work Requirement

If you are incapable of Active Work because of Physical Disease, Injury, Pregnancy or Mental Disorder on the day before the scheduled effective date of your coverage, your coverage will not become effective until the day after you complete one full day of Active Work as an eligible Member.

Active Work and Actively At Work mean performing the Material Duties of your Own Occupation at your Employer's usual place of business.

You will also meet the Active Work requirement if:

1. You were absent from Active Work because of a regularly scheduled day off, holiday, or vacation day;

2. You were Actively At Work on your last scheduled work day before the date of your absence; and

3. You were capable of Active Work on the day before the scheduled effective date of your coverage.

B. Changes In Coverage

This Active Work requirement also applies to any increase in your coverage. However, if you return to Active Work during a period of Disability or Temporary Recovery (see **Temporary Recovery**), you will not qualify for any change in coverage caused by a change in:

1. Your status as a member of a class;

2. The rate of earnings used to determine your Predisability Earnings; or

3. The terms of the Plan.

AS.AW.01X

# STRIKE CONTINUATION

Insurance may be continued for up to 6 months when you cease to be a Member because you are working less than the minimum number of hours due to a strike, lockout or other general work stoppage caused by a labor dispute. Rules 1 through 4 below will apply.

1. When your compensation is suspended or terminated because of a work stoppage, your Employer will immediately notify you in writing of your rights under this provision. Your Employer will mail the notice to you at your last address on record with the Employer.

2. You must pay the entire premium for your Insurance, including the Employer's share, if any, to your Employer on or before each Premium Due Date.

3. The premiums for your Insurance during the work stoppage will equal a percentage of the premium rate in effect on the date the work stoppage began (see **Coverage Features**). We may change Premium Rates during the work stoppage according to the terms of the Group Policy.

4. Insurance continued under this provision will end on the earliest of:

   a. Any Premium Due Date if you fail to make the required premium contribution to your Employer on or before that date.

   b. The date you have been absent from Active Work for 6 months.

   c. On the date you begin full-time employment with another employer.

   d. At our option, on any Premium Due Date if less than 75% of the Members eligible to continue Insurance under this provision make the required premium payment to the Employer.

LT.SK.02

*Ex 1 p 31* 615408-A

## WHEN YOUR COVERAGE ENDS

Your coverage ends automatically on the earliest of:

1. The date the Plan terminates.

2. The date your employment terminates.

3. The date you cease to be a Member. However, if you cease to be a Member because you are not working the required minimum number of hours, your coverage will be continued during the following periods, unless it ends under 1 through 2 above.

   a. During the Benefit Waiting Period and while LTD Benefits are payable.

   b. During a leave of absence if continuation of your coverage under the Plan is required by the state mandated family medical leave act or law.

   c. During any other leave of absence approved by your Employer in advance and in writing and scheduled to last the period shown in the **Coverage Features.**

AS.EN.01X

## REINSTATEMENT OF COVERAGE

If your coverage ends, you may become covered again as a new Member. However, the following will apply.

1. If your coverage ends because you are on a federal or state mandated family or medical leave of absence, and you become a Member again immediately following the period allowed, your coverage will be reinstated pursuant to the federal or state-mandated family medical leave act or law.

2. If you become covered again within 180 days, the Preexisting Conditions Exclusion will be applied as if there had been no break in coverage.

AS.RE.01X

## DEFINITIONS

**BENEFIT WAITING PERIOD** means the period you must be continuously Disabled before LTD Benefits become payable. No LTD Benefits are payable for the Benefit Waiting Period. See **Coverage Features.**

**CONTRIBUTORY** means you pay all or part of the cost for your coverage.

**CPI-W** means the Consumer Price Index for Urban Wage Earners and Clerical Workers published by the United States Department of Labor. If the CPI-W is discontinued or changed, we may use a comparable index. Where required, we will obtain prior state approval of the new index.

**ELIGIBILITY WAITING PERIOD** means the period you must be a Member before you become eligible for coverage. See **Coverage Features.**

**GROUP POLICY** means the group long term disability insurance policy issued by Standard to Plan Sponsor and identified by the Group Policy Number.

**INDEXED PREDISABILITY EARNINGS** means your Predisability Earnings adjusted by the rate of increase in the CPI-W. During your first year of Disability, your Indexed Predisability Earnings are the same as your Predisability Earnings. Thereafter, your Indexed Predisability Earnings are determined on each anniversary of your Disability by increasing the previous year's Indexed Predisability Earnings by the rate of increase in the CPI-W for the prior calendar year. The maximum adjustment in any year is 10%. Your Indexed Predisability Earnings will not decrease, even if the CPI-W decreases.

**INJURY** means an injury to your body.

Revised 5/26/05

- 18 -

*Ex 1 p 32*

615408-A

**INSURED PERIOD** means the portion of each period of continuous Disability for which Standard is solely responsible for payment of LTD Benefits. No LTD Benefits are payable by Plan Sponsor during the Insured Period. See **Coverage Features.**

**LTD BENEFIT** means the monthly benefit payable to you under the terms of the Plan.

**MAXIMUM BENEFIT PERIOD** means the longest period for which LTD Benefits are payable for any one period of continuous Disability, whether from one or more causes. It begins at the end of the Benefit Waiting Period. No LTD Benefits are payable after the end of the Maximum Benefit Period, even if you are still Disabled. See **Coverage Features.**

**NONCONTRIBUTORY** means the Plan Sponsor or Employer pays the entire cost for your coverage.

**PHYSICAL DISEASE** means a physical disease entity or process that produces structural or functional changes in your body as diagnosed by a Physician.

**PHYSICIAN** means a licensed medical professional, other than yourself, diagnosing and treating you within the scope of the license.

**PLAN** means the long term disability income benefit plan established by Plan Sponsor and identified by the ASO Number and includes the Group Policy.

**PREGNANCY** means your pregnancy, childbirth, or related medical conditions, including complications of pregnancy.

**PRIOR PLAN** means your Employer's long term disability plan in effect on the day before the effective date of your Employer's coverage under the Plan and which is replaced by the Plan.

**SELF-FUNDED PERIOD** means the portion of each period of continuous Disability for which Plan Sponsor is solely responsible for payment of LTD Benefits. No LTD Benefits are payable by Standard during the Self-Funded Period. See **Coverage Features.**

**SPOUSE** means:

1. A person to whom you are legally married and from whom you are not legally separated; or

2. Your Domestic Partner. Your Domestic Partner means an individual recognized as such under California state law.

AS.DF.02X

*Ex 1 p 33*

615408-A

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
STANDARD INSURANCE COMPANY, a corporation; and
DOES 1 through 10, inclusive

2008 MAR 25 PM 3: 05

SAN DIEGO COUNTY, CA

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTA DEMANDANDO EL DEMANDANTE):*

LAURIE ORANGE

---

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DIAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

---

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SAN DIEGO SUPERIOR COURT<br>220 W. BROADWAY<br>SAN DIEGO, CALIFORNIA 92101 | CASE NUMBER:<br>*(Número del Caso):*<br>37-2008-00080596-GU-IC-CTL |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
ROBERT K. SCOTT, ESQ. (SBN 67466)    (949) 753-4950
D. SCOTT MOHNEY, ESQ. (SBN 124426)    (949) 753-4949 FAX
7700 IRVINE CENTER DRIVE, SUITE 605, IRVINE, CA 92618

| DATE: | | Clerk, by | | , Deputy |
|---|---|---|---|---|
| *(Fecha)* MAR 25 2008 | | *(Secretario)* I. REYES | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

| [SEAL] | **NOTICE TO THE PERSON SERVED:** You are served |
|---|---|
| | 1. ☐ as an individual defendant. |
| | 2. ☐ as the person sued under the fictitious name of *(specify)*: |
| | *Standard Insurance Company a Corporation* |
| | 3. ☑ on behalf of *(specify)*: |
| | under: ☑ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor) |
| | ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee) |
| | ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person) |
| | ☐ other *(specify)*: |
| | 4. ☐ by personal delivery on *(date)*: |

Page 1 of 1

Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. January 1, 2004]<br>Martin Dean's Essential Forms ™

**SUMMONS**

COPY

Code of Civil Procedure §§ 412.20, 465

*Ex 2 p 34*

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| ROBERT K. SCOTT, ESQ. (SBN 67466)<br>D. SCOTT MOHNEY, ESQ. (SBN 124426)<br>LAW OFFICES OF ROBERT K. SCOTT<br>700 CIVIC CENTER DR., S-605, IRVINE, CA 92618<br>TELEPHONE NO.: (949) 753-4950  FAX NO.: (949) 753-4949<br>ATTORNEY FOR (Name): LAURIE ORANGE | 2008 MAR 25 PM 3:05<br>SAN DIEGO COUNTY, CA |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO |
|---|
| STREET ADDRESS: 220 N. BROADWAY |
| MAILING ADDRESS: SAME |
| CITY AND ZIP CODE: SAN DIEGO, CALIFORNIA 92101 |
| BRANCH NAME: CENTRAL |

| CASE NAME: ORANGE v. STANDARD INSURANCE COMPANY |
|---|

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: 37-2008-00080596-CU-IC-CTL |
|---|---|---|---|---|
| [X] Unlimited<br>(Amount demanded exceeds $25,000) | [ ] Limited<br>(Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

**1. Check one box below for the case type that best describes this case:**

| Auto Tort | Contract | Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403) |
|---|---|---|
| [ ] Auto (22)<br>[ ] Uninsured motorist (46) | [ ] Breach of contract/warranty (06)<br>[ ] Rule 3.740 collections (09)<br>[ ] Other collections (09)<br>[X] Insurance coverage (18)<br>[ ] Other contract (37) | [ ] Antitrust/Trade regulation (03)<br>[ ] Construction defect (10)<br>[ ] Mass tort (40)<br>[ ] Securities litigation (28)<br>[ ] Environmental/Toxic tort (30)<br>[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |

Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

Real Property
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

Enforcement of Judgment
- [ ] Enforcement of judgment (20)

Non-PI/PD/WD (Other) Tort
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

Unlawful Detainer
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

Miscellaneous Civil Complaint
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

Judicial Review
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

Miscellaneous Civil Petition
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

Employment
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**2.** This case [ ] is  [X] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
- a. [ ] Large number of separately represented parties
- b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
- c. [ ] Substantial amount of documentary evidence
- d. [ ] Large number of witnesses
- e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
- f. [ ] Substantial postjudgment judicial supervision

**3.** Remedies sought *(check all that apply)*: a. [X] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [ ] punitive

**4.** Number of causes of action *(specify):* TWO

**5.** This case [ ] is  [X] is not  a class action suit.

**6.** If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: MARCH 25, 2008

ROBERT K. SCOTT, ESQ.
(TYPE OR PRINT NAME)



▶  
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

---

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | Martin Dean's<br>ESSENTIAL FORMS™ | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

COPY



**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
STREET ADDRESS:    330 West Broadway
MAILING ADDRESS:    330 West Broadway
CITY AND ZIP CODE:    San Diego, CA 92101
BRANCH NAME:    Central
TELEPHONE NUMBER:    (619) 685-6064

PLAINTIFF(S) / PETITIONER(S):    Laurie Orange

DEFENDANT(S) / RESPONDENT(S):    Standard Insurance Company

ORANGE VS. STANDARD INSURANCE COMPANY

| NOTICE OF CASE ASSIGNMENT | CASE NUMBER:<br>37-2008-00080596-CU-IC-CTL |
|---|---|

Judge:  Luis R. Vargas                                    Department: C-63

**COMPLAINT/PETITION FILED: 03/25/2008**

**CASES ASSIGNED TO THE PROBATE DIVISION ARE NOT REQUIRED TO COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW**

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

**TIME STANDARDS:** The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil consists of all cases except: Small claims appeals, petitions, and unlawful detainers.

**COMPLAINTS:** Complaints must be served on all named defendants, and a CERTIFICATE OF SERVICE (SDSC CIV-345) filed within 60 days of filing. This is a mandatory document and may not be substituted by the filing of any other document.

**DEFENDANT'S APPEARANCE:** Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than a 15 day extension which must be in writing and filed with the Court.)

**DEFAULT:** If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service.

THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO LITIGATION, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. MEDIATION SERVICES ARE AVAILABLE UNDER THE DISPUTE RESOLUTION PROGRAMS ACT AND OTHER PROVIDERS. SEE ADR INFORMATION PACKET AND STIPULATION.

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION PURSUANT TO CCP 1141.10 AT THE CASE MANAGEMENT CONFERENCE. THE FEE FOR THESE SERVICES WILL BE PAID BY THE COURT IF ALL PARTIES HAVE APPEARED IN THE CASE AND THE COURT ORDERS THE CASE TO ARBITRATION PURSUANT TO CCP 1141.10. THE CASE MANAGEMENT CONFERENCE WILL BE CANCELLED IF YOU FILE FORM SDSC CIV-359 PRIOR TO THAT HEARING

**NOTICE OF CASE ASSIGNMENT**

*Ex 2 p 86*

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CASE NUMBER: 37-2008-00080596-CU-IC-CTL        CASE TITLE: Orange vs. Standard Insurance Company

## **NOTICE TO LITIGANTS/ADR INFORMATION PACKAGE**

You are required to serve a copy of this Notice to Litigants/ADR Information Package and a copy of the blank Stipulation to Alternative Dispute Resolution Process (received from the Civil Business Office at the time of filing) with a copy of the Summons and Complaint on all defendants in accordance with San Diego Superior Court Rule 2.1.5, Division II and CRC Rule 201.9.

## **ADR POLICY**

It is the policy of the San Diego Superior Court to strongly support the use of Alternative Dispute Resolution ("ADR") in all general civil cases. The court has long recognized the value of early case management intervention and the use of alternative dispute resolution options for amenable and eligible cases. The use of ADR will be discussed at all Case Management Conferences. It is the court's expectation that litigants will utilize some form of ADR – i.e. the court's mediation or arbitration programs or other available private ADR options as a mechanism for case settlement before trial

## **ADR OPTIONS**

**1) CIVIL MEDIATION PROGRAM:** The San Diego Superior Court Civil Mediation Program is designed to assist parties with the early resolution of their dispute. All general civil independent calendar cases, including construction defect, complex and eminent domain cases are eligible to participant in the program. Limited civil collection cases are not eligible at this time. San Diego Superior Court Local Rule 2.31, Division II addresses this program specifically. Mediation is a non- binding process in which a trained mediator 1) facilitates communication between disputants, and 2) assists parties in reaching a mutually acceptable resolution of all or part of their dispute. In this process, the mediator carefully explores not only the relevant evidence and law, but also the parties' underlying interests, needs and priorities. The mediator is not the decision-maker and will not resolve the dispute – the parties do. Mediation is a flexible, informal and confidential process that is less stressful than a formalized trial. It can also save time and money, allow for greater client participation and allow for more flexibility in creating a resolution.

**Assignment to Mediation, Cost and Timelines:** Parties may stipulate to mediation at any time up to the CMC or may stipulate to mediation at the CMC. Mediator fees and expenses are split equally by the parties, unless otherwise agreed. Mediators on the court's approved panel have agreed to the court's payment schedule for county-referred mediation: $150.00 per hour for each of the first two hours and their individual rate per hour thereafter. Parties may select any mediator, however, the court maintains a panel of court-approved mediators who have satisfied panel requirements and who must adhere to ethical standards. All court-approved mediator fees and other policies are listed in the Mediator Directory at each court location to assist parties with selection. **Discovery:** Parties do not need to conduct full discovery in the case before mediation is considered, utilized or referred. **Attendance at Mediation:** Trial counsel, parties and all persons with full authority to settle the case must personally attend the mediation, unless excused by the court for good cause.

**2) JUDICIAL ARBITRATION:** Judicial Arbitration is a binding or non-binding process where an arbitrator applies the law to the facts of the case and issues an award. The goal of judicial arbitration is to provide parties with an adjudication that is earlier, faster, less formal and less expensive than trial. The arbitrator's award may either become the judgment in the case if all parties accept or if no trial de novo is requested within the required time. Either party may reject the award and request a trial de novo before the assigned judge if the arbitration was non-binding. If a trial de novo is requested, the trial will usually be scheduled within a year of the filing date.

**Assignment to Arbitration, Cost and Timelines:** Parties may stipulate to binding or non-binding judicial arbitration or the judge may order the matter to arbitration at the case management conference, held approximately 150 days after filing, if a case is valued at under $50,000 and is "at issue". The court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. In addition, if parties select an arbitrator from the court's panel, the court will pay the arbitrator's fees. Superior Court

*Ex 2 p37* 1

**3) SETTLEMENT CONFERENCES:** The goal of a settlement conference is to assist the parties in their efforts to negotiate a settlement of all or part of the dispute. Parties may, at any time, request a settlement conference before the judge assigned to their case; request another assigned judge or a pro tem to act as settlement officer; or may privately utilize the services of a retired judge. The court may also order a case to a mandatory settlement conference prior to trial before the court's assigned Settlement Conference judge.

**4) OTHER VOLUNTARY ADR:** Parties may voluntarily stipulate to private ADR options outside the court system including private binding arbitration, private early neutral evaluation or private judging at any time by completing the "Stipulation to Alternative Dispute Resolution Process" which is included in this ADR package. Parties may also utilize mediation services offered by programs that are partially funded by the county's Dispute Resolution Programs Act. These services are available at no cost or on a sliding scale based on need. For a list of approved DRPA providers, please contact the County's DRPA program office at (619) 238-2400.

**ADDITIONAL ADR INFORMATION:** For more information about the Civil Mediation Program, please contact the Civil Mediation Department at (619) 515-8908. For more information about the Judicial Arbitration Program, please contact the Arbitration Office at (619) 531-3818. For more information about Settlement Conferences, please contact the Independent Calendar department to which your case is assigned. Please note that staff can only discuss ADR options and cannot give legal advice.

Ex 2 p38          2

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS: 330 West Broadway | |
| MAILING ADDRESS: 330 West Broadway | |
| CITY, STATE, & ZIP CODE: San Diego, CA 92101-3827 | |
| BRANCH NAME: Central | |

PLAINTIFF(S):   Laurie Orange

DEFENDANT(S): Standard Insurance Company

SHORT TITLE:   ORANGE VS. STANDARD INSURANCE COMPANY

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION PROCESS (CRC 3.221) | CASE NUMBER: 37-2008-00080596-CU-IC-CTL |
|---|---|

Judge: Luis R. Vargas                                                    Department: C-63

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution process. Selection of any of these options will not delay any case management time-lines.

| | |
|---|---|
| ☐ Court-Referred Mediation Program | ☐ Court-Ordered Nonbinding Arbitration |
| ☐ Private Neutral Evaluation | ☐ Court-Ordered Binding Arbitration (Stipulated) |
| ☐ Private Mini-Trial | ☐ Private Reference to General Referee |
| ☐ Private Summary Jury Trial | ☐ Private Reference to Judge |
| ☐ Private Settlement Conference with Private Neutral | ☐ Private Binding Arbitration |
| ☐ Other (specify): _____ | |

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

_____

Alternate: (mediation & arbitration only) _____

Date: _____                    Date: _____

_____                    _____
Name of Plaintiff                                   Name of Defendant

_____                    _____
Signature                                           Signature

_____                    _____
Name of Plaintiff's Attorney                        Name of Defendant's Attorney

_____                    _____
Signature                                           Signature

(Attach another sheet if additional names are necessary). It is the duty of the parties to notify the court of any settlement pursuant to California Rules of Court, 3.1385. Upon notification of the settlement the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court and all un-served, non-appearing or actions by names parties are dismissed.

**IT IS SO ORDERED.**

Dated:  03/25/2008                                  _____
                                                    JUDGE OF THE SUPERIOR COURT

SDSC CIV-359 (Rev 01-07)                                                      Page: 1

**STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION**

Ex 2 p 39    3

# **FAX COVER SHEET**

FROM:  Warren H. Nelson, Jr.,
A Professional Corporation
6161 El Cajon Blvd., # 273
San Diego, CA 92115
Telephone: (619) 269 4212
Facsimile: (619) 501 7948

DATE: April 9, 2008

Robert K. Scott, Esq.
D. Scott Mohney, Esq.
Law Offices of Robert K. Scott
Voice—949 753 4950
Facsimile—949 753 4949

Subject: Orange v. Standard Insurance Company, Case No. 37-2008-
00080596-CU-IC-CTL (Super Ct, San Diego)—Amount in Controversy

Total pages including cover page: 2

This facsimile communication is for the intended recipient only and is
subject to various legal protections and privileges. If you receive it by
mistake, please do not disseminate it further. Rather, kindly notify me so
that we can make arrangements for return of this communication and all
copies of it in your possession. Thank you.

*Ex 3 p 40*

**Warren H. Nelson, Jr.**
**A Professional Corporation**
**6161 El Cajon Blvd., #273**
**San Diego, CA 92115**

April 9, 2008

**VIA FACSIMILE ONLY**
(949) 753 4949

Robert K. Scott, Esq.
D. Scott Mohney, Esq.
Law Offices of Robert K. Scott
7700 Irvine Center Drive, Suite 605
Irvine, CA 92616

     Re: Orange v. Standard Insurance Company, Case No. 37-2008-
     00080596-CU-IC-CTL (Super Ct, San Diego)—Amount in
     Controversy

Dear Bob and Scott:

     I hope this letter finds you and your families well. It does not seem possible that we last met in your offices in September 2006. Time does indeed fly.

     Standard Insurance Company ("Standard") has asked me to represent it in the case mentioned above. I am writing to seek plaintiff's stipulation that she is ***not*** seeking in excess of $75,000, exclusive of interest and costs, in her action against Standard and ask that you let me know within the next few days whether she will stipulate to that.

Sincerely,

Warren H. Nelson, Jr.

Ex 3 p. 41

WARREN H. NELSON, JR.  #104744
A PROFESSIONAL CORPORATION
6161 El Cajon Boulevard, # 273
San Diego, CA 92115
Telephone:  (619) 269 4212
Facsimile:  (619) 501 7948

Attorney for Defendant
STANDARD INSURANCE COMPANY

FILED
CIVIL BUSINESS OFFICE 7
CENTRAL DIVISION

08 APR 15  PM 1: 47

CLERK-SU... ...COURT
SAN DIEGO COUNTY. CA

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN DIEGO

| | |
|---|---|
| LAURIE ORANGE<br><br>vs.<br><br>STANDARD INSURANCE COMPANY, a corporation, and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No.: 37-2008-00080596-CU-IC-CTL<br><br>DEFENDANT STANDARD INSURANCE COMPANY'S GENERAL DENIAL AND AFFIRMATIVE DEFENSES |

Pursuant to Code of Civil Procedure section 431.30(d), defendant STANDARD INSURANCE COMPANY ("Standard") generally denies each and every allegation of plaintiff's (unverified) Complaint and asserts the following affirmative defenses:

<u>FIRST DEFENSE</u>

1.  The Complaint and each claim for relief therein fails to state a claim upon which relief can be based.

Ex 4 p. 42

## SECOND DEFENSE

2.  Plaintiff's recovery is limited by the terms and conditions of the applicable plan, policy or policies, including limitations upon and exclusions to coverage.

## THIRD DEFENSE

3.  Plaintiff has waived any right to recovery under the terms and conditions of the applicable plan, policy or policies.

## FOURTH DEFENSE

4.  Plaintiff is estopped from seeking recovery on any Standard plan, policy or policies.

## FIFTH DEFENSE

5.  Plaintiff's recovery is limited by the proportion of her fault for any of the damages or other relief requested.

## SIXTH DEFENSE

6.  Plaintiff would receive a windfall and be unjustly enriched by any recovery on any Standard plan, policy or policies.

## SEVENTH DEFENSE

7.  Plaintiff's recovery is limited by any failure to mitigate damages.

## EIGHTH DEFENSE

8.  Performance of any duty Standard owes or owed Plaintiff under the plan, policy or policies at issue has been excused by Plaintiff's actions or inactions to the fullest extent permitted by law.

## NINTH DEFENSE

9.  To the extent that there has been unreasonable delay, Plaintiff's complaint is barred by the doctrine of laches.

## TENTH DEFENSE

10. To the extent that Plaintiff has unclean hands, her complaint is barred.

Ex 4 p 43

W H E R E F O R E, Standard respectfully requests that:

1.   Plaintiff take nothing by her Complaint;

2.   Plaintiff's Complaint be dismissed with prejudice;

3.   Standard recover its costs and attorney fees against Plaintiff to the fullest extent permitted by law; and,

4.   The Court grant such other and further relief to Standard as in all the circumstances may be just.

Dated: April 15, 2008

WARREN H. NELSON, JR.
A PROFESSIONAL CORPORATION
6161 El Cajon Boulevard, # 273
San Diego, CA 92115

Attorney for Defendant
STANDARD INSURANCE COMPANY

Ex 4 p 44

DOCKET No. 37-2008-00080596-CU-IC-CTL

<u>Orange v. Standard Insurance Company, et al.</u>

PROOF OF SERVICE BY MAIL

I, Warren H. Nelson, Jr., the undersigned, hereby certify and declare under

penalty of perjury that I am over the age of 18 years and am not a party to this action.

My business address is Warren H. Nelson, Jr., A Professional Corporation, 6161 El Cajon

Blvd., # 273, San Diego, CA 92115, telephone (619) 269-4212, facsimile (619) 501-

7948. On the 15th day of April 2008, I served a true copy of the foregoing document

titled exactly:

DEFENDANT STANDARD INSURANCE COMPANY'S GENERAL DENIAL AND
AFFIRMATIVE DEFENSES

By placing it/ in an addressed sealed envelope with correct postage affixed thereto and

personally depositing it in the United States mail.  I addressed the mailing envelope to the

following:

Robert K. Scott, Esq.
D. Scott Mohney, Esq.
Law Offices of Robert K. Scott
7700 Irvine Center Drive, Suite 605
Irvine, CA 92618

I declare under penalty of perjury that the foregoing is true and correct.  Executed this

15th day of April 2008 at San Diego, California.

Warren H. Nelson, Jr.

Ex 4 p 45

DOCKET No. UNASSIGNED

<u>Orange v. Standard Insurance Company, et al.</u>

PROOF OF SERVICE BY MAIL

I, Warren H. Nelson, Jr., the undersigned, hereby certify and declare under

penalty of perjury that I am over the age of 18 years and am not a party to this action.

My business address is Warren H. Nelson, Jr., A Professional Corporation, 6161 El Cajon

Blvd., # 273, San Diego, CA 92115, telephone (619) 269-4212, facsimile (619) 501-

7948. On the 15th day of April 2008, I served a true copy of the foregoing document

titled exactly:

**DEFENDANT STANDARD INSURANCE COMPANY'S NOTICE OF REMOVAL**

By placing it/ in an addressed sealed envelope with correct postage affixed thereto and

personally depositing it in the United States mail. I addressed the mailing envelope to the

following:

Robert K. Scott, Esq.
D. Scott Mohney, Esq.
Law Offices of Robert K. Scott
7700 Irvine Center Drive, Suite 605
Irvine, CA 92618

I declare under penalty of perjury that the foregoing is true and correct. Executed this

15th day of April 2008 at San Diego, California.

Warren H. Nelson, Jr.

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 149749   – MS
* * C O P Y * *
April 15. 2008
14:25:19**

**Civ Fil Non-Pris**
USAO #.: 08CV686BTM
Amount.:                    $350.00 CC

**Total–>  $350.00**

FROM: LAURIE ORANGE

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

LAURIE Orange

## DEFENDANTS

Standard Insurance Company, a corporation, and DOES 1 through 10, inclusive,

08 APR 15 PM 2: 17

**(b)** County of Residence of First Listed Plaintiff  San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**08 CV 686 BTM CAB**

**(c)** Attorney's (Firm Name, Address, and Telephone Number) Robert K. Scott # 67466
D. Scott Mahony # 124426, Law Offices of Robert K. Scott, 7700
Irvine Center Drive, Suite 605, Irvine CA 92618
Telephone 949 753 4950 Facsimile 949 753 4949

Attorneys (If Known) Warren H. Nelson Jr. # 104744
A Professional Corporation, 6161 El Cajon
Blvd # 273 San Diego CA 619 269 4212

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Diversity - 28 USC §§ 1332, 1441

Brief description of cause:
Claim for bad faith closure of disability benefits claim

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ .00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE  15 April 08

SIGNATURE OF ATTORNEY OF RECORD  Warren H. Nelson Jr.

FOR OFFICE USE ONLY

RECEIPT # 149749  AMOUNT $350  APPLYING IFP  JUDGE  MAG. JUDGE

MS  4/15

Print

DOCKET No. UNASSIGNED

<u>Orange v. Standard Insurance Company, et al.</u>

PROOF OF SERVICE BY MAIL

I, Warren H. Nelson, Jr., the undersigned, hereby certify and declare under

penalty of perjury that I am over the age of 18 years and am not a party to this action.

My business address is Warren H. Nelson, Jr., A Professional Corporation, 6161 El Cajon

Blvd., # 273, San Diego, CA 92115, telephone (619) 269-4212, facsimile (619) 501-

7948. On the 15th day of April 2008, I served a true copy of the foregoing document

titled exactly:

## CIVIL COVER SHEET

By placing it/ in an addressed sealed envelope with correct postage affixed thereto and

personally depositing it in the United States mail. I addressed the mailing envelope to the

following:

Robert K. Scott, Esq.
D. Scott Mohney, Esq.
Law Offices of Robert K. Scott
7700 Irvine Center Drive, Suite 605
Irvine, CA 92618

I declare under penalty of perjury that the foregoing is true and correct. Executed this

15th day of April 2008 at San Diego, California.

Warren H. Nelson, Jr.